UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PENNY SHERMAN,

                Plaintiff,        Civil Action No. 19-10939
                                       Honorable Denise Page Hood
v.                                         Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 15]

Plaintiff Penny Sherman ("Sherman") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #13, #15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Sherman is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #15)** be **GRANTED**, Sherman's Motion for Summary

Judgment **(Doc. #13)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Sherman was 44 years old at the time of her alleged onset date of September 15, 2015, and at 5'4" tall weighed approximately 225 pounds during the relevant time period. (Tr. 40-41, 228, 231). She completed high school but had no further education. (Tr. 42, 232). Previously, she worked as a security guard, but she stopped working in January 2011 because her legs hurt and she found standing difficult. (Tr. 43-44, 232-33). She now alleges disability primarily as a result of fibromyalgia, back pain, bilateral foot pain (post-surgery), and anxiety. (Tr. 39-40, 47, 50, 54, 231).

After Sherman's applications for DIB and SSI were denied at the initial level on November 22, 2016 (Tr. 108-11, 125-28), she timely requested an administrative hearing, which was held on April 16, 2018, before ALJ Michael Dunn (Tr. 33-70). Sherman, who was represented by attorney Frank Cusmano, testified at the hearing, as did vocational expert Judith Findora. (*Id.*). On July 31, 2018, the ALJ issued a written decision finding that Sherman is not disabled under the Act. (Tr. 17-27). On January 30, 2019, the Appeals Council denied review. (Tr. 1-5). Sherman timely filed for judicial review of the final decision on March 29, 2019. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Sherman's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the

Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Sherman is not disabled under the Act. At Step One, the ALJ found that Sherman has not engaged in substantial gainful activity since September 15, 2015 (the alleged onset date). (Tr. 20). At Step Two, the ALJ found that she has the severe impairments of degenerative disc disease; lumbar radiculopathy; hammer toe deformities and plantar fasciitis of the bilateral feet, status-post surgical reconstructions; bursitis of the hip; obesity; asthma/COPD; hydradenitis suppurativa; and anxiety disorder. (*Id.*). At Step Three, the ALJ found that Sherman's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Sherman's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: can occasionally climb ramps and stairs but can never climb ladders or scaffolds; can frequently balance; can occasionally stoop and crouch, but cannot kneel or crawl; the work must allow for the exercise of a sit/stand option, meaning that there must be work that can be done in both the sitting and standing positions, such that the change in position will not cause her to go off task; after sitting for 30 minutes, she should have the option to stand up

4

for 10 minutes, and after standing for 10 minutes, she should have the option to sit for up to 30 minutes; the work must allow for the use of a hand held assistive device at all times when walking, but it is not required when standing at the workstation, and the contralateral upper extremity may be used to lift and carry up to the exertional limitations; must avoid concentrated exposure to pulmonary irritants and extreme cold temperatures; and is limited to simple, repetitive unskilled tasks performed at the specific vocational preparation ("SVP") level of 1 or 2 within the meaning of the Dictionary of Occupational Titles ("DOT"). (Tr. 21).

At Step Four, the ALJ found that Sherman is not capable of performing her past relevant work. (Tr. 26). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Sherman is capable of performing the jobs of administrative support clerk (220,000 jobs nationally), packer (64,000 jobs), and sorter (25,000 jobs). (Tr. 27). As a result, the ALJ concluded that Sherman is not disabled under the Act. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

5

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

In her motion for summary judgment, Sherman argues that, when formulating her RFC, the ALJ erred: (1) in failing to adequately account for her moderate limitation in

6

concentration, persistence, or pace ("CPP"); and (2) in failing to consider the side effects of her medications. (Doc. #13 at 10-14). Each of these arguments is addressed below.[1]

### *1. The RFC Finding Properly Accounts for Sherman's Moderate CPP Limitation*

When the ALJ evaluated the so-called "paragraph B" criteria at Step Three of the sequential evaluation process,[2] he found that Sherman has a "moderate" limitation in CPP. (Tr. 21). As a result, in the RFC he ultimately adopted, the ALJ limited Sherman to "simple, repetitive unskilled tasks performed at [SVP] 1 or 2 as defined in the [DOT]." (*Id.*). Sherman now argues that this "broad limitation falls short of including the entirety of [her] limitations, especially with regard to CPP." (Doc. #13 at 11). The Court disagrees and, for the reasons set forth below, concludes that the ALJ's mental RFC finding is supported by substantial evidence, including Sherman's own admissions, the objective evidence, and opinions from both the consultative examiner and the state agency reviewing psychologist.

As this Court has recognized, "[t]he ultimate question is whether substantial evidence supports the ALJ's choice of limitations in the RFC assessment and corresponding hypothetical; the ALJ need not include 'talismanic language' in his hypothetical whenever he finds the claimant has CPP limitations." *Barnes v. Comm'r of Soc. Sec.*, No. 12-15256, 2013 WL 6328835, at *14 (E.D. Mich. Dec. 5, 2013) (citing *Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001)). Because there is no bright-line rule

---

[1] Because Sherman does not challenge the ALJ's evaluation of her physical impairments, the Court will not discuss in detail the medical evidence pertaining to those impairments.

[2] Sherman mischaracterizes this as part of the ALJ's "RFC assessment." (Doc. #13 at 10).

requiring an ALJ to account for moderate limitations in CPP in a certain way,[3] the Court must determine whether – given the unique circumstances of this case – the mental limitations included by the ALJ in the RFC adequately account for Sherman's moderate restriction in CPP. *See Summers v. Comm'r of Soc. Sec.*, No. 15-10550, 2016 WL 3769377, at *7 (E.D. Mich. June 2, 2016); *Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *16 (E.D. Mich. Mar. 31, 2014). Here, there is substantial evidence supporting the CPP limitations the ALJ assessed in his RFC finding.

To begin with, the ALJ relied on Sherman's admissions in her function report that she does not have any limitations in the areas of concentration or understanding. (Tr. 20 (citing Tr. 266)). Moreover, the ALJ correctly cited Sherman's statements that she drives, shops once a month, handles her own finances, and is "[g]ood" at following both written and spoken instructions. (Tr. 20-22, 264, 266). The ALJ also cited Sherman's hearing testimony that, on a typical day, she does thousand-piece jigsaw puzzles, reads "all type[s] of novels," and watches television, all of which require concentration. (Tr. 23, 55-56, 265).

The ALJ also gave "great weight" to the opinion of the consultative examiner, Marianne Goergen, Psy.D., that, in terms of Sherman's mental ability to perform work,

---

[3] Indeed, the Sixth Circuit has held that where the ALJ finds a moderate limitation in CPP, it is not *per se* error for the ALJ to issue an RFC with only a limitation to "unskilled work." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in [CPP]."). As with other aspects of an ALJ's decision, the question is simply whether the particular RFC limitation in question is supported by substantial evidence in the record. *See Taylor v. Comm'r of Soc. Sec.*, No. 10-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011); *Schalk v. Comm'r of Soc. Sec.*, No. 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011).

"[t]asks should be simplified to start, gradually increasing in complexity." (Tr. 25, 742). Sherman does not challenge the ALJ's weighing of Dr. Goergen's opinion and, indeed, the ALJ's mental RFC finding – restricting Sherman to jobs that are limited exclusively to simple, repetitive, unskilled tasks performed at SVP 1 or 2 – is even *more* restrictive than what Dr. Goergen believed her capable of.

Additionally, the ALJ considered the opinion of state agency psychologist Jerry Csokasy, Ph.D., who reviewed the evidence of record, conducted a function-by-function evaluation of Sherman's mental abilities, and opined, in relevant part, that Sherman has moderate difficulties in CPP but is not significantly limited in any of the following areas: carrying out very short and simple instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; making simple work-related decisions; and completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 25, 84). Dr. Csokasy ultimately opined that Sherman has the mental ability to perform "simple/routine tasks on a sustained basis in [a] low stress environment," which is consistent with the ALJ's mental RFC finding."[4] (Tr. 84). Sherman does not even mention Dr. Csokasy's opinion, let alone

---

[4] As this Court has explained, the terms "routine" and "low stress" are "often deemed synonymous with" several terms the ALJ included in the RFC finding, such as "simple," "repetitive," and "unskilled." *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *16 (E.D. Mich. Feb. 10, 2012).

challenge the ALJ's evaluation of it, and it was appropriate for the ALJ to give it great weight. *See, e.g., Ferrell v. Comm'r of Soc. Sec.*, No. 1:14-cv-1232, 2016 WL 316724, at *5 (W.D. Mich. Jan. 27, 2016) ("Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are highly qualified and are experts in Social Security disability evaluation.") (internal quotations omitted).

The foregoing constitutes substantial evidence in support of the ALJ's mental RFC finding, which includes significant limitations, and Sherman has not explained how the record in this case justifies more restrictive limitations. *See Mortzfield*, 2014 WL 1304991, at *16 ("Here, plaintiff argues that the ALJ's limitation of plaintiff to 'simple, routine, and repetitive tasks' does not sufficiently account for the moderate impairment in [CPP]. Plaintiff does not, however, satisfactorily explain how his moderate impairment in [CPP] is not fully accounted for in this RFC."). Instead, Sherman simply references the VE's testimony that "if someone needed 20% of the time in a typical work day [off], there would be no work in the national economy for such a person." (Doc. #13 at 11 (citing Tr. 66)). But, Sherman makes no attempt to sustain her burden of establishing that she is such a person, and the Court is not aware of any record evidence that would compel such a finding. Accordingly, Sherman's reliance on this aspect of the VE's testimony is unavailing. *See, e.g., England v. Comm'r of Soc. Sec.*, No. 15-12818, 2016 WL 8114219, at *13-15 (E.D. Mich. July 11, 2016) (rejecting the claimant's argument that a moderate restriction in CPP is equivalent to a finding that the claimant will be off task 20-30% of the time). Thus, the Court finds that substantial evidence supports the ALJ's mental RFC finding.

10

## 2. The ALJ Properly Considered the Side Effects of Sherman's Medications

Sherman's only remaining argument is that the ALJ "failed to consider" her subjective complaints that her medications made her drowsy, and that such a "failure to include the side effects of [her] medications is an error requiring remand[.]" (Doc. #13 at 13, 14 (citing Tr. 46)). "The Sixth Circuit has held that the ALJ must evaluate '[t]he type, dosage, effectiveness, and side effects of any medication' as part of the process of determining the extent to which side effects impair a claimant's capacity to work." *Morin v. Comm'r of Soc. Sec.*, 259 F. Supp. 3d 678, 683 (E.D. Mich. 2017) (quoting *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014)). Like allegations of pain, however, a claimant's subjective allegations of a medication's side effects must be supported by objective medical evidence. *See Howard v. Berryhill*, No. 16-13851, 2017 WL 5493655, at *3 (E.D. Mich. Oct. 24, 2017) (citing cases); *Farhat v. Sec. of Health & Human Servs.*, No. 91-1925, 1992 WL 174540, at *3 (6th Cir. 1992).

Here, the ALJ explicitly acknowledged Sherman's testimony that "her prescription medications make her drowsy." (Tr. 22 (referring to Tr. 46)). However, Sherman "provided no evidence that the alleged side effects should impact her [RFC]." *Hale v. Comm'r of Soc. Sec.*, No. 10-10751, 2011 WL 1641886, at *10 (E.D. Mich. Feb. 1, 2011). Because she has not "establish[ed] a correlation between the potential side effects of the medications she was taking and a disability resulting from those medications[,]" remand is not warranted. *Id.*

Additionally, despite Sherman's hearing testimony that her medications cause

11

drowsiness, there is significant evidence in the record that undermines that testimony. For example, several questions on the function report asked Sherman to explain how her impairments limit her abilities; nowhere in her narrative responses did she mention drowsiness. (Tr. 261-68). This is not surprising considering that the record contains numerous treatment notes where Sherman's providers reported that she was "alert." (Tr. 779, 790, 826, 858, 879, 890, 1058, 1501, 2268, 2325, 2380, 2431). Accordingly, the ALJ reasonably declined to find that Sherman's testimony regarding alleged medication side effects supports more stringent RFC restrictions or a finding of disability.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #15)** be **GRANTED**, Sherman's Motion for Summary Judgment **(Doc. #13)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

| | |
|---|---|
| Dated: March 11, 2020<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a

waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 11, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager